# In re Laura Estella SALAZAR-Regino, Respondent

File A24 384 420 - Harlingen

*Decided February 14, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien whose adjudication of guilt was deferred pursuant to article 42.12, section 5(a) of the Texas Code of Criminal Procedure following her plea of guilty to possession of a controlled substance is considered to have been convicted of the offense. *Matter of Roldan*, Interim Decision 3377 (BIA 1999), reaffirmed.

(2) In *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), the United States Court of Appeals for the Ninth Circuit overruled in part *Matter of Roldan*, *supra*, which will not be applied in cases arising within the jurisdiction of the Ninth Circuit.

(3) In light of the decisions in *United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2000), *cert. denied*, 122 S. Ct. 305 (2001), and *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), the decision of the Board of Immigration Appeals in *Matter of K-V-D-*, Interim Decision 3422 (BIA 1999), will not be applied in cases arising within the jurisdiction of the Fifth Circuit.

FOR RESPONDENT: Lisa S. Brodyaga, Esquire, San Benito, Texas

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Sylvia Alonso, Appellate Counsel

BEFORE:   Board En Banc:  SCIALABBA, Acting Chairman; DUNNE, Vice Chairman; HURWITZ, FILPPU, COLE, GRANT, OHLSON, HESS, and PAULEY, Board Members.   Concurring Opinions:   HOLMES, Board Member, joined by GUENDELSBERGER, MILLER, and OSUNA, Board Members; BRENNAN, Board Member.   Concurring and Dissenting Opinion:   SCHMIDT, Board Member.   Dissenting Opinions:   ROSENBERG, Board Member, joined by VILLAGELIU, and ESPENOZA, Board Members; MOSCATO, Board Member, joined by VILLAGELIU, Board Member.

GRANT, Board Member:

In a decision dated February 22, 1999, an Immigration Judge terminated the removal proceedings against the respondent.   The Immigration and Naturalization Service has appealed from that decision.   Oral argument was heard in this case on June 21, 2001, in Boston, Massachusetts.   The appeal will be sustained.

## I.  BACKGROUND

### A.  Procedural History

The respondent is a native and citizen of Mexico who entered the United States on May 14, 1977, as a nonimmigrant visitor.  Her status was adjusted to that of a lawful permanent resident on May 7, 1981.  On October 11, 1996, an indictment was filed against the respondent in Texas, charging that she committed a third degree felony by "intentionally and knowingly possess[ing] a usable quantity of marijuana in an amount of 50 pounds or less but more than 5 pounds."  The respondent pled guilty to the charge on January 7, 1997, and the District Court for Chambers County deferred adjudication of guilt pursuant to article 42.12, section 5(a) of the Texas Code of Criminal Procedure, placing her on probation for 10 years.

The Service commenced proceedings in this case when it filed a Notice to Appear (Form I-862) with the Immigration Court on August 10, 1998.  The Notice to Appear charged that the respondent is removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. IV 1998), as an alien convicted of an aggravated felony (a drug trafficking crime as defined in section 101(a)(43)(B) of the Act, 8 U.S.C. § 1101(a)(43)(B) (Supp. IV 1998)), and under section 237(a)(2)(B)(i) of the Act as an alien convicted of a controlled substance violation.  In removal proceedings on January 20, 1999, the respondent denied the allegation that she had been "convicted" of the Texas felony offense, and she denied both charges of removability.

### B.  Immigration Judge's Decision

The Immigration Judge first determined that the conviction records established that the respondent had been convicted in Texas of a felony drug possession offense.  He therefore concluded that the respondent was subject to removal under section 237(a)(2)(B)(i) of the Act as an alien convicted of a controlled substance violation.  However, he found that the charge under section 237(a)(2)(A)(iii) was not proved because the respondent's offense was not a felony under federal law and was therefore not an aggravated felony under *Matter of L-G-*, 20 I&N Dec. 905 (BIA 1994).  Finally, the Immigration Judge determined that because the respondent was a first-time drug offender with a state deferred adjudication, she would have been eligible for federal first offender treatment pursuant to 18 U.S.C. § 3607 (1994) if she were prosecuted in federal court, and that she therefore met the requirements set forth in *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995).  Consequently, he concluded that she should not be deported and terminated the proceedings against her.

## C.  Issues

Two issues are presented for resolution in this case.  The first is whether the respondent's deferred adjudication for felony possession of marijuana constitutes a "conviction" under the Act.  Subsequent to the Immigration Judge's decision, we held in *Matter of Roldan*, Interim Decision 3377 (BIA 1999), that *Matter of Manrique*, *supra*, had been superseded in 1996 by the enactment of section 101(a)(48)(A) of the Act, 8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996).[1]  However, in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), the United States Court of Appeals for the Ninth Circuit overruled *Matter of Roldan* in part and required application of the Board's former rule in *Matter of Manrique* in that circuit.  We must therefore determine whether to apply the Ninth Circuit's decision on a nationwide basis.

Assuming that the respondent's deferred adjudication is a conviction for immigration purposes, the second issue before us is whether her offense is an aggravated felony under section 101(a)(43)(B) of the Act.

## D.  Arguments on Appeal

### 1.  Service Arguments

On the first issue, the Service asserts that *Matter of Roldan*, *supra*, is controlling.  It relies as well on *Matter of Punu*, Interim Decision 3364 (BIA 1998), where we held that a deferred adjudication was a conviction under Texas law.  According to the Service, therefore, the respondent was convicted of a drug offense for purposes of the immigration laws and is removable under section 237(a)(2)(B)(i) of the Act.

Regarding *Lujan-Armendariz v. INS*, *supra*, the Service argues that the Ninth Circuit's decision is contrary to the plain language of section 101(a)(48)(A) of the Act, which takes precedence over the federal first offender statute in immigration matters.  The Service also cites the Ninth Circuit's later decision in *Murillo-Espinoza v. INS*, 261 F.3d 771 (9th Cir. 2001), a theft case in which the court deferred to the Board's interpretation

---

[1]  The statutory definition of a conviction in section 101(a)(48)(A) of the Act, which was enacted by section 322 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-628 ("IIRIRA"), provides as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> > (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> >
> > (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

of section 101(a)(48)(A) as precluding recognition of state rehabilitative expungements. In addition, it relies on several other circuit court decisions, which, according to the Service, consider section 101(a)(48)(A) to be controlling on questions regarding the effect of state rehabilitative actions. *Griffiths v. INS*, 243 F.3d 45 (1st Cir. 2001); *Herrera-Inirio v. INS*, 208 F.3d 299 (1st Cir. 2000); *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999); *United States v. Campbell*, 167 F.3d 94 (2d Cir. 1999). Finally, the Service claims that the Ninth Circuit improperly imparted constitutional status to the Board's earlier policy expressed in *Matter of Manrique*, *supra*, by finding our withdrawal from that policy to be a violation of equal protection. For these reasons, the Service urges us not to apply *Lujan-Armendariz* to cases outside the jurisdiction of the Ninth Circuit.

On the second issue, the Service argues that we should apply, in the immigration context, the Fifth Circuit's ruling in *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), which held that, for sentencing guidelines purposes, a state drug offense that is classified as a felony under state law is an aggravated felony, even if it is punishable only as a misdemeanor under federal law. Acknowledging the Board's ruling to the contrary in *Matter of K-V-D-*, Interim Decision 3422 (BIA 1999), the Service cites to the Fifth Circuit's recent decision in *United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir.), *cert. denied*, 122 S. Ct. 305 (2001), where the court reaffirmed its holding in *United States v. Hinojosa-Lopez* and rejected our statements in *Matter of K-V-D-* that *Hinojosa-Lopez* was not binding in immigration cases. Based on this ruling, the Service asserts that the respondent has been convicted of an aggravated felony and is also removable under section 237(a)(2)(A)(iii) of the Act.

## 2. Respondent's Arguments

The respondent argues that *Lujan-Armendariz v. INS*, *supra*, was correctly decided and should be applied on a nationwide basis. She concurs with the court's conclusions (1) that when Congress enacted section 101(a)(48)(A) of the Act, it expressed no intent to amend or repeal by implication the federal first offender statute, and (2) that the principles of equal protection require that an alien who would have received the benefits of the federal statute should get the same benefits if the alien's conviction was expunged under a state rehabilitative statute. She asserts that nationwide application of the Ninth Circuit's decision would foster the uniform administration of the immigration laws if *Matter of Manrique*, *supra*, is reinstated. Finally, she claims that because the Government did not seek further review of *Lujan-Armendariz*, it has essentially acquiesced in the court's ruling.

In regard to the Fifth Circuit's holding in *United States v. Hernandez-Avalos*, *supra*, the respondent notes that the court did not apply *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to our decision in *Matter of K-V-D-*, *supra*, but merely mentioned its disapproval of our holding in dicta. She therefore asserts that, in the absence of a direct ruling on the merits of our decision in *Matter of K-V-D-*, we are not required to apply a contrary rule.

## II. DISCUSSION

### A. Definition of a Conviction for Immigration Purposes

The respondent pled guilty to felony possession of drugs and was granted deferred adjudication pursuant to Texas law. Under the law of the Fifth Circuit, the respondent would clearly be considered convicted of this offense. *Moosa v. INS*, *supra*, at 1005-06; *see also Matter of Punu*, *supra*. The question before us, therefore, is whether, because of the nature of the crime, we should carve out an exception to accord special treatment to first-time drug offenders who have received rehabilitative treatment under a state law. We find that, under the plain language of section 101(a)(48)(A) of the Act, we have no authority to make such an exception. Even if we did have such authority, we are unpersuaded by the Ninth Circuit's decision in *Lujan-Armendariz v. INS*, *supra*, that our interpretation of the statute in *Matter of Roldan* was incorrect. Accordingly, we decline to give the holding in *Lujan-Armendariz v. INS* nationwide application and will continue to apply the rule set forth in *Matter of Roldan* to cases arising outside the jurisdiction of the Ninth Circuit.

### 1. History of the Case Law

The concept of conviction and the treatment of state rehabilitative provisions in immigration proceedings is long and complex. The complete history is adequately set forth in *Matter of Roldan*, *supra*, and it need not be repeated in full here. What follows is a brief discussion of the most significant developments of the law to date.

Prior to the enactment of section 101(a)(48)(A) of the Act, we held that an expunged conviction does not support a finding of deportability. *See Matter of Luviano*, 21 I&N Dec. 235, 237 (BIA 1996); *Matter of Ibarra-Obando*, 12 I&N Dec. 576, 578 (BIA 1966; A.G. 1967); *Matter of G-*, 9 I&N Dec. 159, 161 (BIA 1960; A.G. 1961). The Attorney General, making an exception to that rule, found that a drug conviction expunged under a state rehabilitative statute was not eliminated for immigration purposes. *See Matter of A-F-*, 8 I&N Dec. 429, 432 (BIA; A.G. 1959). However, after considering the effect of the federal first offender statute, we later announced

an exception to the Attorney General's ruling for those convictions expunged under a state law that was a counterpart to the federal first offender statute. *See, e.g.*, *Matter of Werk*, 16 I&N Dec. 234 (BIA 1977). In *Matter of Deris*, 20 I&N Dec. 5 (BIA 1989), we further refined this exception, holding that an alien whose state drug offense was expunged could avoid deportation only if the state expungement statute was an exact counterpart to the federal statute.

The Ninth Circuit subsequently criticized *Matter of Deris* as unduly narrow. *See Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994). In response to *Garberding*, we issued *Matter of Manrique*, *supra*. There we held that, in the interest of uniform application of the immigration laws, a first-time simple drug possession offender, whose conviction was set aside pursuant to a state statute, would not be deported if he or she would have been eligible for treatment under the federal first offender statute had the prosecution been in federal court.

Following the enactment of a definition of a "conviction" in section 101(a)(48)(A) of the Act, however, we determined in *Matter of Roldan*, *supra*, that we could no longer "apply a policy exception providing federal first offender treatment to certain drug offenders who have received state rehabilitative treatment, in the face of the definition provided by Congress." *Id.* at 19. We therefore concluded that *Matter of Manrique* had been superseded by the statute.

In *Lujan-Armendariz v. INS*, *supra*, the Ninth Circuit partially reversed our holding in *Matter of Roldan*, *supra*. The court held that enactment of the definition of a conviction at section 101(a)(48)(A) of the Act did not repeal the federal first offender statute, either on its face or by implication. *Id.* at 743-46. It concluded further, on constitutional equal protection grounds, that an alien whose first-time simple drug possession offense was expunged by a state rehabilitative statute cannot be deported if first offender treatment would have been accorded under 18 U.S.C. § 3607 had the alien been prosecuted in federal court. *Id.* at 748-49. While the Ninth Circuit's holding in *Lujan-Armendariz* is limited to cases in which aliens would have been eligible for rehabilitative treatment under the federal first offender statute, the court also indicated that no expunged conviction could constitute a conviction under section 101(a)(48)(A) of the Act. *Id.* at 745-46.

Subsequent to that decision, however, a different panel of the Ninth Circuit held that a state court action setting aside a theft conviction under a rehabilitative scheme did not eliminate the immigration consequences of that offense. *Murillo-Espinoza v. INS*, *supra*. Affirming our decision in *Matter of Roldan*, *supra*, insofar as it applies to expunged convictions in general, the court stated that while our interpretation of section 101(a)(48)(A) of the Act is not the only plausible one, it is a permissible construction of the statute entitled to deference under the principles enunciated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*.

## 2. Statutory Language

The starting point in cases involving statutory construction must be the language employed by Congress. It is assumed that the legislative purpose is expressed by the ordinary meaning of the words used. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *INS v. Phinpathya*, 464 U.S. 183, 189 (1984). The plain language of both section 101(a)(48)(A) of the Act and the federal first offender statute supports our holding in *Matter of Roldan*, *supra*, that the definition of a conviction for immigration purposes does not give effect to state rehabilitative treatment accorded to first-time simple drug possession offenders.

Section 101(a)(48)(A) of the Act clearly states the requirements for a conviction under the immigration laws. The statute contains no exception for offenders who have been accorded rehabilitative treatment under state law. Similarly, there is no provision in the federal first offender statute relating to convictions that have been vacated, set aside, or otherwise expunged under *state* law. Nothing in either statute indicates that Congress intended to excuse a first-time simple drug possession offender accorded rehabilitative treatment under state law from the definition of a conviction that it set forth in section 101(a)(48)(A).

The body of case law that sought to balance various policy interests and provide a uniform rule for when an alien is considered convicted for immigration purposes has now been superseded by Congress' enactment of section 101(a)(48)(A) of the Act. *See Matter of Roldan*, *supra*. Although this federal definition of a conviction raises the possibility that uniform results may not be accorded to similarly-situated aliens, Congress clearly chose not to provide otherwise. The mandate of Congress has been expressed by the straightforward language of the statute, and, as we concluded in *Roldan*, we are not at liberty to create exceptions where Congress has declined to provide them.[2]

---

[2] In particular, we find this case distinguishable from our decision in *Matter of Devison*, Interim Decision 3435 (BIA 2000, 2001), where we determined that the New York statutory procedure in which a youthful offender is first convicted and then determined to be eligible for youthful offender status is not sufficiently analogous to an expungement to bring it within the scope of *Matter of Roldan*, *supra*. First, *Matter of Devison* proceeded from a long line of Board decisions holding that an adjudication of juvenile delinquency is not a "conviction" for purposes of the Act. *See, e.g.*, *Matter of De La Nues*, 18 I&N Dec. 140 (BIA 1981); *Matter of Ramirez-Rivero*, 18 I&N Dec. 135 (BIA 1981); *Matter of C-M-*, 5 I&N Dec. 327 (BIA 1953); *Matter of F-*, 4 I&N Dec. 726 (BIA 1952). We noted that there was no indication in the text or legislative history of the IIRIRA that Congress intended to overrule this line of cases. In contrast, our decision in *Matter of Manrique*, *supra*, was more recent, and it is clear that Congress intended in enacting section 101(a)(48)(A) to unify the treatment of various

(continued...)

### 3.  Legislative History

Our interpretation of section 101(a)(48)(A) of the Act in *Matter of Roldan*, *supra*, is consistent with its legislative history.  Although legislative statements have less force than the plain language of the statute, such statements are helpful to corroborate and underscore a reasonable construction of the statute.  *See Weinberger v. Rossi*, 456 U.S. 25, 32 (1982); *Matter of Punu*, *supra*.  Here, the Conference Report states that Congress enacted the definition of a conviction for the express purpose of clarifying when a conviction exists for immigration purposes, in light of the disparities caused by varying state rehabilitative procedures.  H.R. Conf. Rep. No. 104-828 (1996), at 224, *available in* 1996 WL 563320, at *496.  According to the report, Congress was not satisfied with how the Board dealt with cases in which a judgment of guilt or imposition of sentence was suspended, conditioned upon an alien's future good behavior.  The report explicitly states that Congress intended the definition of a conviction to include cases involving state deferred adjudication laws, noting that a conviction occurs upon a finding or confession of guilt, before the term of probation begins, regardless of whether the state requires further proceedings to determine the alien's guilt or innocence if probation is violated.

The legislative history of section 101(a)(48)(A) of the Act further indicates that Congress intended convictions that are expunged pursuant to state rehabilitative laws to remain convictions for immigration purposes, notwithstanding the nature of the offense.  The Conference Report noted that "aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered 'convicted' have escaped the immigration consequences normally attendant upon a conviction" as a result of "a myriad of provisions [in state laws] for ameliorating the effects of a conviction." H.R. Conf. Rep. No. 104-828, at 224.  Congress clearly desired to remedy this situation by passing a law to ensure that aliens whose guilt had been

---

[2] (...continued)
forms of state rehabilitative provisions, specifically the one at issue in this case.  Second, the New York "youthful offender" procedure at issue in *Devison* involves the *vacating* of a conviction *prior to the initial sentencing of the defendant*.  As we noted in that case, the vacating of the conviction and finding of youthful offender status is not contingent upon future good behavior, and it cannot be altered as a result of future delinquent or even criminal behavior.  Expungements, of course, are contingent on future behavior.  Thus, our holding in *Devison* is not a case of granting an "exception" to the provisions of section 101(a)(48)(A); rather, it is a recognition, such as we also made in *Matter of Rodriguez-Ruiz,* Interim Decision 3436 (BIA 2000), that the vacating of a conviction extinguishes that conviction *for reasons present at the time of the entry of the conviction* and thus removes it as a possible ground of deportation.

established could not avoid deportation as a result of some subsequent state action to eliminate the consequences of the conviction. Nothing in the legislative history suggests that Congress contemplated any exceptions, express or implicit, to the federal definition of a conviction that it mandated for immigration purposes. It would be inappropriate for us to create such exceptions where none were authorized by Congress.[3]

### 4. Equal Protection

We are unpersuaded by the Ninth Circuit's reasoning in *Lujan-Armendariz v. INS*, *supra*, that our withdrawal from the policy set forth in *Matter of Manrique*, *supra*, violates equal protection. The court found "no rational basis" for treating aliens whose convictions were expunged under state rehabilitative provisions differently from those who were prosecuted in federal court for the same offenses. *See also Garberding v. INS*, *supra*. This presupposes, of course, that aliens accorded first offender treatment in federal court would not be subject to removal, as the court concluded. We declined to address this issue in *Matter of Roldan*, *supra*, and continue to do so here.[4] However, even if we were to find that aliens treated as first offenders in federal court are exempt, we would not be bound to hold that aliens convicted in state court are likewise exempt from removal.

We have long declared that we lack authority to rule on the constitutionality of the statutes we administer. *See, e.g.*, *Matter of Rodriguez-Carrillo*, Interim Decision 3413 (BIA 1999); *Matter of C-*, 20 I&N Dec. 529 (BIA 1992); *Matter of Cenatice*, 16 I&N Dec.162 (BIA 1977). Here, however, any extension of *Lujan-Armendariz* outside the Ninth Circuit depends on whether that court's equal protection rationale is shared by the United States Supreme Court or the Fifth Circuit. We therefore consider it

---

[3] The Ninth Circuit in *Lujan-Armendariz v. INS*, *supra*, and the dissent in this case cite to the legislative history's focus on the question of "deferred adjudication" as evidence that Congress intended to modify only a portion of the Board's prior case law on the subject of convictions, namely *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), but leave intact rulings such as *Matter of Manrique*, *supra*. We find that the plain language of the statute, buttressed by the legislative history, clearly establishes that Congress intended to "lock in" a conviction for purposes of immigration law at the time guilt is determined and a sentence imposed. The statutory text does not indicate that this purpose was limited to schemes of "deferred adjudication," as opposed to other forms of rehabilitative treatment.

[4] We are not aware that the Board has *ever* been presented with a case in which an alien has been charged with deportability on the basis of an adjudication under 18 U.S.C. § 3607. We are quite certain that no such case has reached the Board since the issuance of *Matter of Roldan*, *supra*. This may reflect prosecutorial discretion, or infrequency of use of the provisions in § 3607. In any event, as we note in the text, it is wholly speculative that this respondent, who was charged with possession of 5 to 50 pounds of marijuana, would have received such lenient treatment in the federal system.

appropriate to examine the equal protection rationale that underpins *Lujan-Armendariz*.

The Ninth Circuit's equal protection analysis is based on speculation that a first-time offender prosecuted under state law would have been granted first offender treatment in the federal courts. However, such treatment is not a right or entitlement and, indeed, is quite generous compared to many state sentencing and rehabilitative schemes. Under the federal first offender statute, no conviction is entered pending the successful completion of probation, and the length of such probation is limited by statute to 1 year. It simply cannot be known whether any particular defendant in state proceedings would have been found to warrant such treatment had they been prosecuted in federal court. We note that the respondent in this case was convicted of possession of between 5 and 50 pounds of marijuana and received a sentence of 10 years' probation, whereas the aliens at issue in *Lujan-Armendariz* received sentences that included jail time and 5 years' probation. While such sentences do not dictate what the outcome would have been in federal court, they illustrate the fruitlessness of trying to impose uniform consequences under the Act for aliens who were prosecuted for similar criminal conduct in the more than 50 jurisdictions comprising our federal system.

We find further reason for declining to follow the *Lujan-Armendariz* rule in the decision of the Eleventh Circuit in *Fernandez-Bernal v. Attorney General of the United States*, 257 F.3d 1304 (11th Cir. 2001). In that case, the court found that an alien whose first-time simple drug possession offense had been expunged under a state rehabilitative statute could not claim that he would have been eligible for federal first offender treatment because his sentence—2 years' probation and time in jail—exceeded the maximum penalty of 1-year probation set forth in 18 U.S.C. § 3607. Without reaching the question whether to adopt the rule in *Lujan-Armendariz*, the Eleventh Circuit concluded that aliens, such as the respondent in this case, who were sentenced in state court to more than 1 year of probation could not have received first offender treatment under the federal law. In light of our holding, it is unnecessary for us to consider whether to adopt the Eleventh Circuit's ruling outside that circuit. Nevertheless, we note that its decision clearly demonstrates the futility of seeking "uniform" results between federal and state prosecutions by engaging in speculation as to whether a particular first-time drug offender would have been adjudicated under 18 U.S.C. § 3607.

In other contexts, the Supreme Court and, indeed, the Ninth Circuit itself, have rejected the argument that equal protection requires such an attempt at uniformity. *See McCleskey v. Kemp*, 481 U.S. 279, 312 (1987) (noting that apparent disparities in sentencing are an inevitable part of our criminal justice system); *United States v. Antelope*, 430 U.S. 641, 648-49 (1977) (asserting that because Congress has constitutional power to prescribe the criminal code

applicable in Indian country, it is of no consequence that the federal scheme differs from the state criminal code that is otherwise applicable within the state); *Williams v. Illinois*, 399 U.S. 235, 243 (1970) (stating that the Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences); *see also United States v. Laughing*, 855 F.2d 659, 660 (9th Cir. 1988); *United States v. Hall*, 778 F.2d 1427, 1428 (9th Cir. 1985); *United States v. Flores*, 540 F.2d 432, 438 (9th Cir. 1976); *Schneider v. California*, 427 F.2d 1178, 1179 (9th Cir. 1970) (holding that nothing in the Constitution requires that persons convicted of the same crime receive identical penalties), *cert. denied*, 401 U.S. 929 (1971).

Furthermore, we find no indication that the Fifth Circuit, in whose jurisdiction the instant case arises, shares the Ninth Circuit's theory of equal protection as expressed in *Lujan-Armendariz*. In this regard, we note the Fifth Circuit's recent rulings that a first-time drug possession offense prosecuted as a felony under Texas state law constitutes a "drug trafficking crime" under 18 U.S.C. § 924(c), even though such an offense is only a misdemeanor under federal law and thus would not be prosecuted as a drug trafficking crime in federal court. *United States v. Hernandez-Avalos*, *supra* (reaffirming *United States v. Hinojosa-Lopez*, *supra*). Consequently, under the law of the Fifth Circuit, immigration consequences may vary dramatically depending on whether an alien's crime is prosecuted in state or federal court: the alien convicted in state court is an aggravated felon; the federal defendant is not.

In sum, neither the Supreme Court nor the Fifth Circuit follows the sweeping equal protection analysis set forth in *Lujan-Armendariz v. INS*, *supra*. There is no mechanism to extend the principles of the federal first offender statute to offenses expunged under state rehabilitative laws. Section 101(a)(48)(A) of the Act provides a clear and evenhanded standard for determining when a criminal proceeding in any jurisdiction has given rise to a "conviction" for purposes of the immigration laws. This provision does not exempt first-time simple drug possession offenders who have been accorded rehabilitative treatment under state law. Accordingly, we find that we are not compelled to apply *Lujan-Armendariz* to cases arising outside the jurisdiction of the Ninth Circuit.

## 5. Application of Section 101(a)(48)(A) to Expungements

As we noted previously, the court in *Lujan-Armendariz v. INS*, *supra*, also analyzed whether, in general, a criminal conviction expunged under a state rehabilitative provision constitutes a conviction under section 101(a)(48)(A) of the Act. While acknowledging congressional intent to treat all deferred adjudications as convictions for immigration purposes prior to

their expungement, the court nevertheless stated its belief that Congress did not intend to eliminate the longstanding rule that, when a conviction or finding of guilt has been expunged, it may not thereafter be used as the basis for removal. *Id.* at 745-46. The court's discussion of this issue is contrary to our holding in *Matter of Punu*, *supra*, and, if taken to its logical conclusion, would vitiate our holding in that case. However, the subsequent decision of another panel of the Ninth Circuit in *Murillo-Espinoza v. INS*, *supra*, calls into question the continued validity of much of the analysis set forth in *Lujan-Armendariz* by giving deference to our holding in *Matter of Roldan*, *supra*. Consequently, it provides further reason for this Board to not apply the holding of that case nationwide.

Moreover, the decisions of several other circuit courts support our interpretation in *Matter of Roldan*, *supra*, of section 101(a)(48)(A) of the Act, by finding that state rehabilitative expungements have no effect in immigration proceedings. Most significantly, the Fifth Circuit found that a Texas deferred adjudication satisfies both prongs of the statutory definition and, consequently, is a conviction for immigration purposes. *Moosa v. INS*, *supra*. In this regard the court stated that the text of the statute "could not be more clear." *Id.* at 1005.

The First Circuit has also emphasized that the language of section 101(a)(48)(A) "leaves nothing to the imagination." *Herrera-Inirio v. INS*, *supra*, at 304. The court noted that the definition of a conviction clearly includes situations where adjudication of guilt has been withheld, and it concluded that a subsequent dismissal of charges based solely on rehabilitative goals does not vitiate the original admission of guilt. *See also Griffiths v. INS*, *supra* (holding that our interpretation of the treatment of withheld adjudications is wholly consistent with the plain language of the statute). Finally, the Second Circuit refused to recognize a Texas expungement of a drug offense, finding that no provision of the immigration laws gives controlling effect to state law or excepts from section 101(a)(48)(A) a conviction that has been vacated pursuant to a state rehabilitative statute. *United States v. Campbell*, *supra*.

We find clear support in these circuit court decisions for our conclusion in *Matter of Roldan* that Congress did not intend to provide any exceptions from its statutory definition of a conviction for expungements pursuant to state rehabilitative proceedings. For this reason and those stated above, we find that it would be inappropriate to give the Ninth Circuit's ruling in *Lujan-Armendariz v. INS*, *supra*, nationwide application.

## B.  Aggravated Felony

It is undisputed that the respondent pled guilty to possession of marijuana, which is a third degree felony under Texas law.  Although the Fifth Circuit held that this offense is an aggravated felony for federal sentencing purposes in *United States v. Hinojosa-Lopez*, *supra*, we declined to apply that decision in the immigration context in *Matter of K-V-D-*, *supra*.  However, the Fifth Circuit recently concluded that our interpretation was "plainly incorrect" in *United States v. Hernandez-Avalos*, *supra*, at 509.  The court stated that it found no validity to giving different interpretations to the definition of a drug trafficking crime in 18 U.S.C. § 924(c) based on a distinction between sentencing and immigration cases.  It therefore applied the holding in *United States v. Hinojosa-Lopez* to the alien in that case and found him to be an aggravated felon.  We are bound to apply the law of the circuit in cases arising in that circuit.  *See Matter of K-S-*, 20 I&N Dec. 715 (BIA 1993); *Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989).  Because this case is in the Fifth Circuit, we find that the offense to which the respondent pled guilty is an aggravated felony.[5]  *United States v. Hernandez-Avalos*, *supra*; *United States v. Hinojosa-Lopez*, *supra*; *see also Matter of Olivares*, 23 I&N Dec. 148 (BIA 2001).  *But see Matter of K-V-D-*, *supra*; *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995); *Matter of L-G-*, 20 I&N Dec. 905 (BIA 1994).

## III.  CONCLUSION

After considering the analysis set forth in *Lujan-Armendariz v. INS*, *supra*, we decline to apply the ruling in that decision to cases arising outside of the jurisdiction of the Ninth Circuit.  We therefore conclude that, except in the Ninth Circuit, a first-time simple drug possession offense expunged under a state rehabilitative statute is a conviction under section 101(a)(48)(A) of the Act.  Accordingly, pursuant to *Matter of Roldan*, *supra*, we find that the respondent has been convicted for immigration purposes.  Inasmuch as the respondent's offense is an aggravated felony according to the rulings of the Fifth Circuit, we conclude that she is removable on both of the grounds charged.  Accordingly, the Service's appeal will be sustained and the respondent will be ordered removed from the United States.

**ORDER:**  The appeal of the Immigration and Naturalization Service is sustained.

**FURTHER ORDER:**  The decision of the Immigration Judge is vacated, and the respondent is ordered removed from the United States.

---

[5] We do not address at this time the question whether the court's holding in *United States v. Hernandez-Avalos*, *supra*, applies outside the Fifth Circuit.

*CONCURRING OPINION*: David B. Holmes, Board Member, in which John Guendelsberger, Neil P. Miller, and Juan P. Osuna, Board Members, joined

I respectfully concur in the majority's holding that the respondent is removable as charged under controlling precedent of the United States Court of Appeals for the Fifth Circuit. I also agree that the Ninth Circuit's ruling in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), should not be found dispositive of this case.

Given the express language of 18 U.S.C. § 3607(b) (2000), I would likely find that a respondent, whose criminal proceedings had been dismissed under the provisions of that statute, should not be considered to have a conviction under the immigration laws. However, given the enactment in section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (Supp. II 1996), of a statutory definition of the term "conviction," I would not extrapolate from such a limited finding that aliens whose offenses have been subject to rehabilitative treatment under any of the varying state criminal procedures would not have a "conviction" for purposes of the Act simply because they would have been eligible to have been considered for relief under 18 U.S.C. § 3607 had their offenses been prosecuted as federal crimes. My reservations in this regard are particularly strong given that the Ninth Circuit's analysis in *Lujan-Armendariz v. INS*, *supra*, is made without any regard to the sentences that the aliens in question actually received in the state criminal proceedings. *Cf. Fernandez-Bernal v. Attorney General of the United States*, 257 F.3d 1304, 1305 (11th Cir. 2001).

Although I joined *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), and am largely of the view that the decision was appropriately decided at the time, I do not think that our analysis in that decision paid adequate attention to the actual sentences that were at issue in the state proceedings in question. Following *Matter of Manrique*, *supra*, the Board was soon presented by cases arising from state criminal proceedings in which the nature or circumstances of the aliens' drug possession offenses were such that they had been required to serve meaningful terms of incarceration followed by significant periods of probation. Although the underlying offenses were not ones that would have barred the respondents from being considered for treatment under the provisions of 18 U.S.C. § 3607 had the crimes been prosecuted in federal court, if the sentences actually imposed had been deemed the appropriate response to the crimes in question, the offenses could not have been disposed of under 18 U.S.C. § 3607. In effect, aliens convicted in state courts were given broader protection under the immigration laws from the consequences of their drug convictions than those prosecuted in federal court.

Further, although the Ninth Circuit did not find it necessary to resolve the issue under the facts of the case before it, the analysis in *Lujan-Armendariz v. INS*, *supra*, at 746 n. 28, indicates, for example, that a respondent required to serve a period of confinement as a result of a state drug possession conviction, followed by a lengthy period of probation that *might* eventually lead to an expungement of the conviction, could not be subjected to removal proceedings until the term of probation was completed.[1] Such a result seems entirely at odds with the present language of the Act and the now-controlling statutory definition of a "conviction" in section 101(a)(48)(A). Accordingly, I agree that the Ninth Circuit's decision in *Lujan-Armendariz v. INS*, *supra*, should not be found controlling in this case.

*CONCURRING OPINION*: Noel Ann Brennan, Board Member

I respectfully concur in the result in this case.

*CONCURRING AND DISSENTING OPINION:* Paul Wickham Schmidt, Board Member

I respectfully concur in part and dissent in part.

I concur in Part II.B. of the majority, holding that by reason of *United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir.), *cert. denied*, 122 S. Ct. 305 (2001), we are bound to follow *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), in this case, which arises in the jurisdiction of the United States Court of Appeals for the Fifth Circuit.

Otherwise, I join the reasoning of Board Members Rosenberg and Moscato, who conclude that we should continue to follow the rule set forth in *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), on a nationwide basis.

*DISSENTING OPINION:* Lory Diana Rosenberg, Board Member, in which Gustavo D. Villageliu, and Cecelia M. Espenoza, Board Members, joined

I respectfully dissent.

When the respondent first came to the United States in 1977, as a 6-year-old child, she was lawfully admitted as a nonimmigrant. In 1981, when she was 10, her status was adjusted to that of a lawful permanent resident. She grew up in this country and on October 11, 1996, nearly 20 years after

---

[1] In the present case, following the respondent's plea of guilty, the Texas criminal proceedings against her were deferred and she was placed on probation for a period of 10 years, subject to various conditions including participation in a drug rehabilitation program and being tested for drugs at least every 30 days. The record does not reflect that this period of probation has been terminated by the state court and the proceedings against her dismissed under the provisions of article 42.12 of the Texas Code of Criminal Procedure.

her original entry, she was charged by the state of Texas with possession of marijuana. On January 7, 1997, the respondent pled guilty and received a deferred adjudication of guilt under article 42.12, section 5(a) of the Texas Code of Criminal Procedure, placing her on probation.

The majority rejects the opportunity to modify our decision in *Matter of Roldan*, Interim Decision 3377 (BIA 1999), *vacated in part sub nom. Lujan-Armendariz v. INS*, 222 F.3d 728, 745-49 (9th Cir. 2000), and to narrow our interpretation of section 101(a)(48) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48) (Supp. II 1996), so that it is appropriately limited to its express terms.[1] Rather than do so, the majority continues to elaborate rationalizations for extending section 101(a)(48) of the Act to encompass offenses that we previously held should not constitute a basis for deportation. *See Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995). The majority contends that the language of section 101(a)(48) of the Act, which was added by Congress in 1996, warrants the conclusion that Congress intended us to ignore the Federal First Offender Act, 18 U.S.C. § 3607 (2000) ("FFOA"), and related policy concerns. I disagree.

There is nothing in the plain language of this provision or its legislative history that says as much. The majority's interpretation requires us to abrogate well-established federal policy that individuals with first-time possession of controlled substance offenses should not be considered to have been convicted for any purpose. *See* 18 U.S.C. § 3607(b). Reading the statutory language in this way not only creates a conflict with other federal provisions, but results in a constricted reading that cannot be reconciled with our own recent decisions.

## I. CONTEXT

As the respondent has resided in the United States since early childhood and has been a lawful permanent resident for over 20 years, her interest in not being removed from the United States is considerable. Given the potential permanence of such a removal, the stakes are high and it is worthwhile to clarify the procedural and legal posture of this case.

When the respondent denied the allegation that she had been "convicted" under section 101(a)(48)(A) of the Act at a removal hearing conducted on January 20, 1999, the Immigration Judge correctly found that a Texas deferred adjudication amounted to a conviction. *See Matter of Punu*, Interim Decision 3364 (BIA 1998). He found, however, that the respondent was not deportable under section 237(a)(2)(B) of the Act, 8 U.S.C. § 1227(a)(2)(B) (Supp. IV 1998), because the respondent would have been eligible for first

---

[1] *See* section 322(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-628 ("IIRIRA") (defining "conviction").

offender treatment under the Federal First Offender Act had she been prosecuted under federal law.[2]   *See* 18 U.S.C. § 3607(a); *Matter of Manrique*, *supra*.

At the time the Immigration Judge rendered his decision, *Matter of Manrique* was controlling.  In *Matter of Manrique*, we ruled that we would "extrapolate[] [the requirements of the FFOA] to apply to the various versions of state rehabilitate provisions." *Id.* at 64 (citing 18 U.S.C. § 3607). We explained that there was a clear federal policy not to deport first offenders of simple possession offenses, which had historical underpinnings dating back to the 1974 recommendation of the Solicitor General in *Matter of Andrade*, 14 I&N Dec. 651( BIA 1974).  *Matter of Manrique*, *supra*, at 63; *see also Matter of Werk*, 16 I&N Dec. 234 (BIA 1977).  We held that, in the interest of a uniform application of the law, the exception in 18 U.S.C. § 3607(a) should be extended equally to an offender who could have obtained FFOA treatment had he been prosecuted under federal law.  *Matter of Manrique*, *supra*, at 63-64.

Our ruling in *Manrique* did not turn on the definition of a conviction in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), which has been displaced by the addition of section 101(a)(48) of the Act.  Rather, in *Manrique*, we stated that we "would now consider a person 'convicted' under the [state deferred adjudication] statutes in those cases, *but for the policy of leniency toward first offenders*."  *Matter of Manrique*, *supra*, at 63 n.8 (emphasis added); *see also Matter of A-F-*, 8 I&N Dec. 429, 445-46 (BIA, A.G. 1956) (holding that Congress did not intend an expungement to overcome the immigration consequences of a drug conviction).  Thus, we would have considered Manrique to have been "convicted" even under the pre-1996 definition of a conviction, but we found that an exception was warranted based on federal law.

Nevertheless, in *Matter of Roldan*, *supra*, issued after the Immigration Judge's decision, we concluded that the exception articulated in *Matter of Manrique* had been superseded by section 101(a)(48)(A) of the Act, which we found to have left "no room . . . for recognizing state rehabilitative actions in the context of immigration proceedings." *Matter of Roldan*, *supra*, at 20.[3] We claimed that "Congress has chosen . . . to define the term 'conviction'. . .

---

[2]   The Immigration Judge also found that the drug trafficking charge under section 237(a)(2)(A)(iii) of the Act could not be sustained because the respondent's conviction would not amount to a felony under comparable federal law and did not constitute an aggravated felony under *Matter of L-G-*, 20 I&N Dec. 905 (BIA 1994).  *Cf. United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir.), *cert. denied*, 122 S. Ct. 305 (2001).

[3]   We did not decide the effect to be given first offender treatment accorded in federal prosecutions under 18 U.S.C. § 3607 by a federal court. *See Matter of Roldan*, *supra*, at 16 n.9.

to encompass actions which would not generally be considered convictions." *Id.* at 20.

The breadth of our interpretation of Congress' use of the term "conviction" in *Matter of Roldan*, *supra*, has been rejected by the United States Court of Appeals for the Ninth Circuit. *Lujan-Armendariz v. INS*, *supra*. Other circuit courts have acknowledged the Ninth Circuit's decision, but appear not to have adopted its ruling for case-specific reasons. *See*, *e.g.*, *Fernandez-Bernal v. Attorney General of the United States*, 257 F.3d 1304 (11th Cir. 2001) (finding that *Matter of Roldan* had been called into question, but declining to decide the issue because it decided that Fernandez-Bernal was ineligible for FFOA treatment); *Sandoval v. INS*, 240 F.3d 577, 583 (7th Cir. 2001) (finding that the strength of the Service's position has been "called into question by the Ninth Circuit's rejection of much of *Roldan-Santoyo's* reasoning"); *see also Mugalli v. Ashcroft*, 258 F.3d 52, 61 n.12 (2d Cir. 2001) (distinguishing *Lujan-Armendariz v. INS*, *supra*, because "[t]here is no analogous federal relief in this case").

In *Lujan-Armendariz*, the Ninth Circuit held that the enactment of section 101(a)(48)(A) of the Act did not repeal the FFOA or supersede the *Manrique* rule. *Lujan-Armendariz v. INS*, *supra*, at 749. Finding no irreconcilable conflict with section 101(a)(48)(A) of the Act, the Ninth Circuit held that dispositions under the FFOA and its state counterparts constituted one of a few implied exceptions to the definition articulated in section 101(a)(48)(A). *Id.* at 746-47.[4] Thus, the court ruled that an alien who previously would have qualified for first offender treatment still qualifies after the passage of section 101(a)(48) of the Act and will not be deemed to have been convicted. *Id.* at 742-43, 745; *see also Cardenas-Uriarte v. INS*, 227 F.3d 1132, 1136 n.4 (9th Cir. 2000) ("In other words, *Matter of Manrique* survives AEDPA and IIRIRA.").

We are bound to apply the Ninth Circuit's decisions in cases arising within the Ninth Circuit. *Matter of K-S-*, 20 I&N Dec. 715 (BIA 1993); *Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989). In addition, after issuing *Matter of Roldan*, *supra*, we also have recognized specific exceptions to the definition of a conviction in section 101(a)(48)(A) of the Act.

We have ruled that neither the conviction definition nor our recent precedents require us to depart from past precedents holding that "juvenile adjudications are not convictions for purposes of federal immigration law." *Matter of Devison*, Interim Decision 3435, at 9 (BIA 2000; 2001) (finding that adjudication of youthful offender status pursuant to Article 720 of the New York Criminal Procedure Law corresponds to the Federal Juvenile

---

[4] *Cf. Murrillo-Espinoza v. INS*, 261 F.3d 771 (9th Cir. 2001) (finding that because section 101(a)(48) of the Act was silent as to its effect upon expungements, the Board's interpretation that expungements were of no effect was a permissible one).

Delinquency Act, 18 U.S.C. §§ 5031-5042 ("FJDA"), and does not constitute a conviction under section 101(a)(48)(A) of the Act). We also have held that a state court judgment vacating a conviction is effective in nullifying it for immigration purposes where there is no indication it was based on a rehabilitative statute. *Matter of Rodriquez-Ruiz*, Interim Decision 3436 (BIA 2000); *see also Matter of Roldan*, *supra*, at 15 (recognizing limitations on our decision). In these decisions, we identified administrative reasons, consistent with federal statutory exceptions and considerations of full faith and credit, to not regard certain state dispositions as convictions under section 101(a)(48)(A) of the Act.

By disregarding or misreading this context, the majority has lost the opportunity to correct the excesses of our decision in *Matter of Roldan*, *supra*. Consequently, the majority has perpetuated the disparate treatment of aliens whose cases arise within the jurisdiction of the Ninth Circuit and those, such as the respondent, whose cases arise outside that jurisdiction. *Cf. Matter of L-V-C-*, Interim Decision 3382, at 2 (BIA 1999) ("Because of the importance of uniform application of the law, however, we here reconsider our holding in . . . light of the Ninth Circuit's decision . . . .").

## II. STATUTORY INTERPRETATION

Unlike the majority, I am not satisfied that the interpretation of the statute we provided in *Matter of Roldan* is either reasonable or permissible. Interpretation of statutory language begins with the terms of the statute itself, and if those terms, on their face, constitute a plain expression of congressional intent, they must be given effect. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). The Supreme Court specifically ruled that it was bound to """"assume 'that the legislative purpose is expressed by the *ordinary meaning of the words used*.'"""" *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987) (quoting *INS v. Phinpathya*, 464 U.S. 183, 189 (1984) (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)))) (emphasis added). It is only if the language is ambiguous that an agency is expected to provide a reasonable interpretation of the provision that corresponds with congressional intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, at 842-43.

In construing the plain language of the statute, our role is to apply the deportation provisions of the Act narrowly. *Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948). The Supreme Court's edict that "[w]e resolve the doubts in favor of that [more narrow] construction because deportation is a drastic measure and at times the equivalent of banishment or exile" is as applicable today as it was nearly 55 years ago when first pronounced. *Id.* at 10 (citing

*Delgadillo v. Carmichael*, 332 U.S. 388 (1947)).[5]  In *Fong Haw Tan*, the Supreme Court explained that "we will not assume that Congress meant to trench on [the immigrant's] freedom beyond that which is required by the *narrowest of several possible meanings of the words used.*"  *Id.* at 10 (emphasis added); *see also Costello v. INS*, 376 U.S. 120, 128 (1964) (finding that "we would nonetheless be constrained by accepted principles of statutory construction . . . to resolve that doubt in favor of the petitioner").

The Supreme Court's recent decision in *INS v. St. Cyr*, 121 S. Ct. 2271 (2001), reflects that this rule retains its force today.  *Id.* at 2290 (recognizing "'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien'" in conjunction with its analysis of the first prong of the *Chevron* test (quoting *INS v. Cardoza-Fonseca*, *supra*, at 449)).  Thus, given a choice of constructions, we are obliged to opt for the more narrow reading, i.e., the one that will less often result in removal.

## A. Statutory Language Defining a Conviction

We begin by looking at the language used by Congress in defining a "conviction" in section 101(a)(48)(A) of the Act.  *See INS v. Cardoza-Fonseca*, *supra*, at 431; *INS v. Phinpathya*, *supra*, at 183, 189.  Although we must rely on the plain language in the first instance, we may look to legislative history in order to determine whether there is a clear indication of contrary intent.  *See INS v. Cardoza-Fonseca*, *supra*, at 433.

Both the respondent and the Service agree that the statutory language defining a conviction is plain.  There is no disagreement that in enacting section 101(a)(48)(A), "Congress codified the *Ozkok* definition but eliminated its third prong."  *Matter of Devison*, *supra*, at 10; *see also Lujan-Armendariz v. INS*, *supra*, at 742 ("Congress adopted verbatim the first two sub-parts of the Ozkok definition, while notably omitting the third."); *Matter of Roldan*, *supra*, at 8 (stating that "Congress definitively excised the third prong of *Ozkok*"); *cf. Matter of Ozkok*, *supra*.[6]

---

[5]  We have recognized and applied this rule with approval in more than 30 precedent decisions issued since 1949.  *See, e.g.*, *Matter of Farias*, 21 I&N Dec. 269, 274 (BIA 1996; A.G., BIA 1997); *Matter of Tiwari*, 19 I&N Dec. 875 (BIA 1989); *Matter of Baker*, 15 I&N Dec. 50 (BIA 1974); *Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974); *Matter of G-*, 9 I&N Dec. 159 (BIA 1960); *Matter of K-*, 3 I&N Dec. 575 (BIA 1949).  In so doing, we have found consistently that questions of deportability must be resolved in the alien's favor. *Matter of Serna*, 20 I&N Dec. 579, 586 (BIA 1992); *Matter of Chartier*, 16 I&N Dec. 284, 287 (BIA 1977).

[6]  The third prong of *Matter of Ozkok*, *supra*, at 552, states that

a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

This reading is confirmed by the legislative history accompanying the enactment of section 322 of the IIRIRA, which expresses general approval of our approach in *Ozkok*, but adds that *Ozkok* "does not go far enough." *See* H.R. Conf. Rep. No. 104-828, at 224 (1996) ("Joint Explanatory Statement"). The statement explains that "by removing the third prong of *Ozkok*, [the new definition] *clarifies Congressional intent* that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." *Id.* (emphasis added).

Nothing in either the statute or its legislative history addresses dispositions under the FFOA, adjudications under the FDJA, or subsequent expungements or vacations of judgment.[7]  Rather, the plain language and legislative history indicate that Congress' enactment of a definition of a "conviction" was intended to modify our precedent in just one respect—to treat deferred adjudications as convictions at the time that a guilty plea is entered and a penalty is imposed.

In addition, at oral argument in this case, the Service conceded that there is a distinction between a deferred adjudication, which constitutes a conviction under section 101(a)(48)(A) of the Act, and an expungement of a conviction under a state rehabilitative statute such as existed in *Lujan-Armendariz*.  The Service contended that "the Ninth Circuit did not find that [Lujan] was not convicted for purposes of 101(a)(48)(A)," so that "it's not a question of whether [the FFOA was] repealed [by] 101(a)(48)(A)," but "whether [the FFOA] even applies in the Immigration context."

This presents us with a question somewhat different from the issues on which the majority has focused.  The appropriate question is: does the enactment of section 101(a)(48)(A) of the Act supersede our precedent relating to dispositions that could have been made under the FFOA?

## 1.  Scope of Section 101(a)(48)(A) of the Act

In *Matter of Roldan*, *supra*, we construed the statutory language as necessarily indicating Congress' intent to brook no exceptions to the definition of a conviction.  If the statute either expressly included language stating that a first offender disposition was a conviction or expressly foreclosed any exceptions to the definition of a "conviction," that would be

---

[7]  In *Matter of Ozkok*, *supra*, at 552, we made clear that the definition of a conviction we adopted did not alter our preexisting rules relating to expungements.  Nothing in the legislative history "expressly evince[s] any will on the part of Congress to include all vacated or expunged criminal convictions within the definition of a conviction" or to alter the way we and the courts have traditionally treated such convictions. *Matter of Roldan*, *supra*, at 25 (Villageliu, Board Member, dissenting).

the end of the matter. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, at 842-43.

However, the statute does not expressly state either that a first offender disposition constitutes a "conviction" or that the definition forecloses exceptions to its terms. *See* section 101(a)(48)(A) of the Act; *Matter of Roldan*, *supra*, at 20. Nor is there any general language suggesting Congress' intent to repeal or exclude the operation of any other federal statutes, such as might have been indicated by the phrase, "notwithstanding any other provision of law." *See, e.g.*, *INS v. St. Cyr*, *supra*, at 2285-86 (noting that in the absence of language stating that the term applies regardless of whether the conviction was entered before, on, or after the date of enactment, the statute fails to "speak[] with sufficient clarity to bar jurisdiction"); *see also, e.g.*, IIRIRA § 321(b), 110 Stat. at 3009-628 (describing the effective date of the definition of an aggravated felony by expressly excluding "any other provision of law").

It is axiomatic that Congress is deemed to be aware not only of prior interpretations of a statute, but also of preexisting case law when it acts. *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute."); 2A C. Sands, *Sutherland on Statutory Construction* § 49.09 (4th ed. 1973); *see also Cannon v. University of Chicago*, 441 U.S. 677, 696 (1979) (emphasizing that "a distinguished panel of the Court of Appeals for the Fifth Circuit squarely decided this issue"). In enacting a statutory definition of the term "conviction," Congress demonstrated a detailed knowledge of existing judicial and administrative interpretations of the term in relation to immigration law violations. *See generally* Joint Explanatory Statement, *supra*, at 224. The presumption that Congress acted with such knowledge is particularly appropriate where Congress "exhibited both a detailed knowledge of the [incorporated] provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation." *Lorillard v. Pons*, *supra*, at 581.

Equally important, Congress is not presumed to change well-established legal precedent by silence. *American Hosp. Ass'n v. N.L.R.B.*, 499 U.S. 606, 613-14 (1991) ("If this amendment had been intended to place the importation limitation on the scope of the Board's rulemaking powers . . . we would expect to find some expression of that intent in the legislative history."). Congress did not devise a new definition of a conviction wholesale, but actually adopted the first two clauses of the existing administrative definition under which we had operated for at least a decade. Moreover, the statute does not address either 18 U.S.C. § 3607 specifically or first offender dispositions generally. As was the case in *Lorillard v. Pons*, *supra*, Congress' selectivity in eliminating one particular element of our prior definition of a conviction "strongly suggests that but for those changes

Congress expressly made, it intended to incorporate fully the [existing] remedies and procedures." *Id.* at 582.

When Congress wished to absolutely eliminate any exceptions to a statutory provision in the 1996 Act, it did so expressly. *See, e.g.*, section 242 of the Act, 8 U.S.C. § 1252 (Supp. II 1996) (relating to judicial review). "Had Congress intended to [exclude operation of the FFOA] by passing the new definition of conviction, it could easily have done so by express reference . . . or at the least by including a 'notwithstanding any other law' provision with respect to the new definition." *Lujan-Armendariz v. INS*, *supra*, at 747. Accordingly, Congress must be deemed to be aware of the FFOA and the 25-year history of its application in immigration proceedings.


## 2. Effect of 18 U.S.C. § 3607

Section 3607 of Title 18 specifies that in the case of an individual who is a first-time offender charged with possession of a controlled substance, including a youthful offender under 21 years of age, a disposition reached is "*not . . . a conviction* for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or *for any other purpose*." 18 U.S.C. § 3607(b) (emphasis added).[8] In § 3607, Congress expressly provided an exception to the ordinary procedures and consequences that accompany a conviction for a controlled substance violation under 21 U.S.C. § 844, and made that exception available to a first-time offender. Furthermore, convictions other than those mentioned explicitly under 21 U.S.C. § 844 are also covered. *See United States v. Barial*, 31 F.3d 216, 219 (4th Cir. 1994) (holding that first offender treatment under § 3607 is available to those found guilty of an offense *described in* § 844 even if the conviction is not *under* § 844). The rule that such dispositions may not be used "for any purpose" has been extended to similar state expungements. *See Lujan-Armendariz v. INS*, *supra*, at 743; *Matter of Manrique*, *supra*.

The majority seeks to rid itself of the problem of our past precedent in *Matter of Manrique* and prior decisions by reasserting arguments against the applicability of equal protection principles that the Service lost before the Ninth Circuit long before the statute was amended in 1996. *See, e.g.*, *Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994) (rejecting a narrow administrative policy that only expungements under exact state counterparts to the FFOA would be recognized). However, Congress' use of the words

---

[8] The ultimate disposition of a criminal charge under 18 U.S.C. § 3607 may take one of two forms. The first, limited to a first-time offender, involves prejudgment probation, which, if completed successfully, *does not constitute a judgment of conviction*. 8 U.S.C. § 3607(a). The second, applicable to a youthful offender, involves a disposition under § 3607(a) that is subject to expungement under 18 U.S.C. § 3607(c).

"described in" in 18 U.S.C. § 3607(a) indicates that the focus is not on whether the offense is prosecuted under federal or state law, but on the type of conduct involved. *United States v. Barial*, *supra*, at 218 (citing *United States v. Rivera*, 996 F.2d 993, 996 (9th Cir. 1993)). It is plain that Congress knew how to confine special probationary treatment to the actual violators of a referenced provision, as subsection (a) provides that special probation may be considered for those found guilty of an offense "described in" 21 U.S.C. § 844, while subsection (c) provides expungement only for recipients of special probation under the age of 21 who were found guilty of "an offense under" § 844. 18 U.S.C. § 3607. Where Congress has chosen different language in proximate subsections of the same statute, courts are obligated to give that choice effect. *Russello v. United States*, 464 U.S. 16, 23 (1983); *see also United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972).

In *Garberding v. INS*, *supra*, the Ninth Circuit emphasized that it is not the fortuitous circumstance of jurisdiction, but whether the offense involves first time possession that would qualify for probationary treatment under the FFOA that should determine whether the exception applies. *Id. at* 1190; *see also United States v. Barial*, *supra*, at 217 (extending the FFOA exception to an offender found guilty of one count of marijuana possession and one count of cocaine possession and sentenced to 1 year of probation on each count). Distinctions resting on a local jurisdiction's treatment of such an offender "ha[ve] no logical relation to the fair administration of the immigration laws or the so-called 'war on drugs'" and lack a fair and substantial relation to the object of the legislation. *Garberding v. INS*, *supra*, at 1191 (citing *Francis v. INS*, 532 F.2d 268, 272 (2d Cir. 1976)). Likewise, we rejected arguments such as those now embraced by the majority when we opted to follow the rulings of the Ninth Circuit in *Garberding v. INS*, recognizing them to be consistent with federal policy concerns advocated by the Solicitor General not to deport first offenders. *Matter of Manrique*, *supra*, at 63 ("It is clear that the policy not to deport aliens treated as first offenders or youth offenders under state laws stems from the Solicitor General's recommendation in *Matter of Andrade*.").

The majority's suggestion that the respondent might not qualify under the FFOA, seconded by the concurring opinion, is equally unavailing.[9] *Matter of Manrique*, *supra*, provides that a first offender is not subject to deportation if: (1) he was "accorded rehabilitative treatment under a state statute" and (2) he "establishes that *he would have been eligible* for federal first offender

---

[9] The concurring opinion is self-contradictory, contending on the one hand that the court's analysis in *Lujan-Armendariz* was made without regard to the actual sentences imposed, but asserting on the other hand that the court considered limiting the effect of a conviction where a respondent was "required to serve a period of confinement" followed by probation. *Matter of Salazar*, 23 I&N Dec. 223, 236 (BIA 2002) (Holmes, concurring). In any event, it is of no effect here, where the respondent received only probation.

treatment under the provisions of 18 U.S.C. § 3607(a) (1988) had he been prosecuted under federal law." *Id.* at 64. According to *Manrique*, state rehabilitative treatment has been accorded when "[t]he court has entered an order pursuant to a state rehabilitative statute under which the . . . criminal proceedings *have been deferred pending successful completion of probation or the proceedings have been or will be dismissed* after probation." *Id.* (emphasis added).

The operative language is that the offender who received state rehabilitative treatment "would have been eligible" for first offender treatment. Eligibility for federal first offender treatment is triggered by a first time offense for simple possession of a controlled substance. 18 U.S.C. § 3607(a). With due respect, treatment of a state disposition under this federal policy is not determined by examining the amount of the controlled substance the offender is charged with possessing, or the period of probation imposed. *Cf. Fernandez-Bernal v. INS*, *supra*, at 1316 ("Fernandez-Bernal could not have received FFOA expungement relief, because he was actually sentenced to two years of probation, *as well as a term in jail.*") (emphasis added). In this case, the respondent's offense was for a first time offense of simple possession and the disposition imposed under a state rehabilitative statute was only a period of probation. Consistent with our decision in *Matter of Manrique*, the charges against the respondent have been deferred pending her successful completion of probation, when they will be dismissed.

The definition of a conviction in the Act does not repeal the FFOA and does not even mention it. *Lujan-Armendariz v. INS*, *supra*, at 743. In general, repeal by implication is not favored and may be found only where two statutes are in irreconcilable conflict or where one statute entirely displaces another. *Id.* at 743 (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976)); *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) (stating that "the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable"); *see also Ysleta Del Sur Pueblo v. Texas*, 36 F.3d 1325, 1335 (5th Cir. 1994) (affirming that in the absence of a clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442-45 (1987)); *Ardestani v. INS*, 904 F.2d 1505, 1513 (11th Cir. 1990) (finding no conflict between a provision to remove common law and sovereign immunity barriers and earlier provisions barring fee shifting), *aff'd*, 502 U.S. 129 (1991).

There is no irreconcilable conflict merely because two statutes compel different results. *Radzanower v. Touche Ross & Co.*, *supra*, at 155. If the statutes are capable of coexistence, each must be given effect. *Lujan-Armendariz v. INS*, *supra*, at 744. Accordingly, both statutes can be preserved and given effect by continuing to treat a disposition under the FFOA or a state rehabilitative statute as a narrow exception that does not

frustrate the broad purposes of the definition of a conviction under section 101(a)(48)(A) of the Act. *Id.* at 745; *Matter of Manrique*, *supra*.

## B. Exceptions to a "Conviction"

The majority appears to ignore both the historical context and current circumstances in which we have found narrow exceptions to the presence of a conviction. Notably, as a general rule, we have treated the expungement of a controlled substance conviction as being *ineffective* to overcome the fact of a conviction for immigration purposes for more than 40 years. *Matter of A-F-*, *supra*. At the same time, for more than 25 years, we also have recognized that "Congress expressed its intent to rehabilitate the individual user of drugs. This policy has been considered to be of equal importance to the congressional policy to deport narcotics offenders." *Matter of Deris*, 20 I&N Dec. 5, 9-10 (BIA 1989) (emphasis added) (footnote omitted) (citing *Matter of Werk*, *supra*, at 236). The distinction between these two policy interpretations culminated in our decision in *Matter of Manrique*, *supra*, and Congress is deemed to be aware of such historical exceptions.

Moreover, since our decision in *Matter of Roldan*, *supra*, we have identified exceptions to the statutory definition of a conviction under section 101(a)(48)(A) of the Act. Despite the attempts of the majority to minimize these precedents, their content contradicts the position of the majority that such exceptions are inapposite to the proper construction of section 101(a)(48)(A). The majority does not explain how it can find that some of our precedents, such as *Matter of Manrique*, are subject to implied repeal, but conclude that other longstanding interpretations continue in force.

For example, in *Matter of Devison*, *supra*, we ruled that an adjudication of youthful offender status under New York state law does not constitute a conviction under section 101(a)(48)(A) of the Act. *Id.* at 15. In reaching this conclusion, we recognized that "the standards established by Congress, as embodied in the FJDA, govern whether an offense is to be considered an act of delinquency or a crime." *Id.* at 5. We found that the New York state procedure at issue in *Devison* was "sufficiently analogous" to the federal provision to classify the adjudication as a determination of delinquency rather than a conviction for a crime. *Id.* at 8. We concluded that "there is no indication that Congress intended to include acts of juvenile delinquency within the meaning of the term 'conviction.'" *Id.* at 10. Citing several decades of precedent opinions, we presumed that "Congress was aware of our long-established policy and of the FJDA provisions that maintain a distinction between juvenile delinquencies and criminal convictions." *Id.*

The majority attempts to rationalize its blatantly contradictory rulings by asserting that a youth offender adjudication is really not a conviction—and therefore not in need of an exception to prevent it from being deemed a

conviction. The majority emphasizes that once the decision to treat the defendant as a youthful offender is made, the conviction is automatically vacated. But, it still existed, i.e., a plea was taken and a penalty imposed, just as contemplated under section 101(a)(48)(A) of the Act. An FFOA adjudication is hardly different.

In *Matter of Devison*, *supra*, we examined a state rehabilitative provision, compared it to a federal statute exempting such a disposition from being considered a conviction, and concluded that there was sufficient similarity that an adjudication under the state provision should not be deemed a conviction under section 101(a)(48)(A) of the Act. In *Matter of Manrique*, *supra*, we looked to a state rehabilitative provision and concluded that if the offender could have been prosecuted under the FFOA, the state provision was sufficiently analogous to the FFOA not to constitute a conviction for any purpose. *See* 18 U.S.C. § 3607(b). The majority's refusal to acknowledge either that section 101(a)(48)(A) of the Act can accommodate exceptions, or that the respondent's deferred adjudication under a state rehabilitative scheme constitutes such an exception, cannot be reconciled with *Matter of Devison*.

In *Matter of Devison*, *supra*, at 11, we also emphasized that it was our "consistent policy, expressed in *Ozkok* as well as in *Punu* and *Roldan*" that a single, federal standard should govern. We concluded "that the determination of what constitutes a conviction for purposes of federal immigration law should not depend on the classifications assigned by different state laws to adjudications subject to rehabilitative provisions." *Id.* Accordingly, we found it appropriate to "continue to apply a federal standard, analyzing state juvenile or youthful offender proceedings against the provisions of the FJDA." *Id.* at 12.

Now, the majority unabashedly contradicts its own position, acknowledging that its holding will result in inconsistent applications of the statute and a lack of uniformity. *Matter of Salazar*, 23 I&N Dec. 223, 229 (BIA 2002) ("Although this federal definition . . . raises the possibility that uniform results may not be accorded . . . Congress clearly chose not to provide otherwise."). By contrast, in rationalizing the decision it reached in *Matter of Roldan*, the majority emphasized that Congress' intent in introducing the definition of a conviction was to achieve uniformity. *Id.* at 229-30 (citing Joint Explanatory Statement, *supra*, at 224). Indeed, the Conference Report plainly indicates that the intent in eliminating the third prong of the *Ozkok* decision is to avoid having to fall back on the "myriad of provisions for ameliorating the effects of a conviction." Joint Explanatory Statement, *supra*, at 224.

This confused position does not support the conclusions reaffirmed by the majority. Contrary to the position taken by the majority in this instance, the statute can accommodate exceptions and the Service has admitted as much. *See Lujan-Armendariz v. INS*, *supra*, at 746-47 ("The INS concedes, and we

agree, that Congress did not intend that a conviction subsequently overturned on the merits (either because of a finding of insufficient evidence or because of a basic procedural inadequacy, such as a violation of the right to counsel), could serve as the basis for deportation."). However, the majority persists in arguing that in the absence of an express statement from Congress, section 101(a)(48)(A) of the Act forecloses any exceptions.

The conclusion that section 101(a)(48)(A) of the Act leaves no room for exceptions to its terms based on state statutes proves to be an overstatement. *See Matter of Roldan*, *supra*, at 20 ("We find no room in the present statutory scheme for recognizing state rehabilitative actions . . . ."). *But see Lujan-Armendariz v. INS*, *supra*, at 747 ("Because the limitation is required by virtue of the provisions of the statute itself, we do not simply create a statutory exception, but rather implement the Congressional intent [to accommodate exceptions] implicit in the statute's terms."). Indeed, we have implemented some of these exceptions in both *Matter of Devison*, *supra*, and *Matter of Rodriguez-Ruiz*, *supra*.

Even if we were to construe the language in section 101(a)(48)(A) as "silent" in relation to whether 18 U.S.C. § 3607 and comparable state provisions apply in immigration proceedings, the conclusion in *Matter of Roldan* that the statute allows for no exceptions in relation to the FFOA is not a permissible one. Such a conclusion requires us to infer that section 101(a)(48)(A) repeals the FFOA, at least insofar as it applies in immigration proceedings. By contrast, additional support for the view that "Congress did not intend to bar any and all exceptions to the new definition's literal terms can be found in its failure to provide any indication in the immigration statute that the new law was intended to displace the Federal First Offender Act." *Lujan-Armendariz v. INS*, *supra*, at 747. "Had Congress intended to partially repeal the Act by passing the new definition of conviction, it could easily have done so by express reference to the Act, or at the least by including a 'notwithstanding any other law' provision with respect to the new definition." *Id.*; *see also Matter of Devison*, *supra*.

## III. CONCLUSION

Section 101(a)(48)(A) of the Act does not preclude the operation of the FFOA in immigration proceedings. The federal first offender statute remains in force and expressly provides that a disposition under that section is not to be considered a conviction *"for any . . . purpose."* 18 U.S.C. § 3607(b) (emphasis added); *see also INS v. St. Cyr*, *supra*, at 2278-79 ("Implications from statutory text or legislative history are not sufficient to repeal [an existing statutory provision]."). Under these circumstances, the statutory definition of a "conviction" continues to leave room for an "exception" where an alien accorded rehabilitative treatment under a state statute establishes that

she would have been eligible for first offender treatment under the FFOA. *Matter of Manrique*, *supra*.

In light of these conclusions, I would find that the respondent is not removable under sections 237(a)(2)(B) or 237(a)(2)(A)(iii) of the Act. Therefore, although I recognize that the Fifth Circuit has indicated that its interpretations in federal sentence enhancement proceedings apply equally to immigration cases, I do not find it necessary to reach the second issue addressed by the majority. I conclude that the respondent should not be deemed to have been convicted and, accordingly, I dissent.

*DISSENTING OPINION:* Anthony C. Moscato, Board Member, in which Gustavo D. Villageliu, Board Member, joined

I respectfully dissent.

The central question in this case is whether the Congress of the United States, in rewriting the definition of a conviction in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), eliminated the Federal First Offender Act, 18 U.S.C. § 3607 (2000) ("FFOA"), as a factor in immigration proceedings. The majority chooses not to decide that issue, but to reject the decision of the United States Court of Appeals for the Ninth Circuit in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), that state court convictions for crimes that *would have been* amenable to treatment under the FFOA should not be considered "convictions" under the IIRIRA. The dissent of Board Member Rosenberg seeks to recognize the viability of the FFOA, absent its specific elimination from immigration proceedings, as a narrow preexisting exception to the definition of a conviction in the IIRIRA—and goes on to argue that the Ninth Circuit was correct in extending that exception to state court convictions.

I write separately to emphasize what I believe to be the most important reason to dissent from the majority opinion in this case, which is that the majority fails to fully recognize the *profound* importance of the congressional policy choice that supports and animates the Federal First Offender Act.

This country has long been engaged in what has often been characterized as a "war" against both the threat and the reality of illegal drug use by our people, especially our youth. Over the past decades, we have seen a constantly increasing allocation of money and authority designed to stop the importation, sale, and use of illegal drugs in the United States. Over and over again, at both the federal and state levels, statutes prohibiting the importation, sale, and use of such drugs have been made more severe, and law enforcement officials have been granted ever-increasing authority to proceed against both traffickers and users as this nation has sought to use every resource at its command to stop or slow the use of illegal drugs. Yet in the

midst of this battle to achieve a goal shared by virtually all Americans, in the midst of the increasing severity of that effort, the Federal First Offender Act—which provides relief from the criminal consequences of a first drug use conviction under certain circumstances—was both passed and maintained in force by the United States Congress. We might reasonably ask why, considering that its passage and preservation would appear to be so at odds with the prevailing logic and structure of our governmental efforts in this area.

The answer may not, in the end, be as counterintuitive as it seems. While we recognize, as both a nation and a government, the significant threat that illegal drugs pose to our way of life, we also recognize that people sometimes make mistakes, and that they sometimes do silly and stupid and foolish and self-destructive things, especially the young among us. The FFOA is a careful and limited attempt on the part of Congress to recognize, amid the maelstrom of counternarcotic and antidrug efforts, that a single ill-advised act, where it relates to drug use and not drug importation, trafficking, or sale, should not necessarily destroy a life. It also recognizes the reality of illegal drug use across the depth and breadth of our society and seeks in some measured way to recognize and respond to that reality while maintaining a fierce and intractable opposition in all other ways. It is, in the end, a uniquely American balancing of hopes and goals, values and ideals.

Most of those affected by this case and these statutes are lawful permanent residents; they are individuals who, although not citizens, have been accepted in some sense into the body politic of this nation and have been granted a legal basis for their continued presence in the United States. They are subject to deportation or removal solely because of their conviction for a first-time drug use offense. If the Congress has been willing to maintain the relief inherent in the FFOA for citizens of the United States, even in the face of its own extraordinary counternarcotic and antidrug efforts, it seems reasonable to conclude that it also intended to maintain that relief for those granted lawful permanent resident status in the United States, notwithstanding the increases in severity contained within the IIRIRA's provisions. In the absence of a specific and explicit elimination of the FFOA in immigration proceedings, I am forced to so conclude.